IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NISKANEN CENTER, INC.,<br>1201 New York Avenue NW, Suite 200B,<br>Washington, D.C. 20005,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br>The Executive Office,<br>Office of the Legal Adviser,<br>Suite 5.600, 600 19th Street NW,<br>Washington, D.C. 20522<br><br>*Defendant*. | Civil Action No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act<br>(5 U.S.C. § 552 *et seq.*) |

The above captioned Plaintiff, Niskanen Center, alleges as follows:

### INTRODUCTION

1. Plaintiff Niskanen Center ("Niskanen") files this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and declaratory relief, to seek immediate disclosure and release of agency records wrongfully withheld from Niskanen by the United States Department of State ("State").

2. The FOIA Request at issue seeks information regarding recommendations from Interested U.S. Government Agencies (as defined below at ¶ 24) to State for waivers of the two-year home residency requirement for J-1 visa holders under Section 212(e) of the Immigration and Nationality Act ("INA"). Waivers of the two-year home country physical presence requirement can be utilized to retain foreign physicians who have received graduate medical training in the United States.

1

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

4. FOIA provides for injunctive relief under 5 U.S.C. § 552(a)(4)(B). The Declaratory Judgment Act provides for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq*.

5. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

6. Niskanen is a 501(c)(3) non-profit think tank and public policy organization dedicated to promoting robust markets and evidence-based policy. Niskanen has long advocated for creating legal immigration pathways that encourage economic growth and rebuild an effective immigration system capable of preserving U.S. interests and supplementing the domestic workforce, including in the healthcare sector. Niskanen has its primary office in the District of Columbia.

7. Niskanen is injured by State's failure to timely issue a determination regarding Niskanen's request for public records and to produce public records which Niskanen is entitled to receive under FOIA. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive").

8. Defendant "State" is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. State has possession, custody, or control of the requested records and is responsible for fulfilling the FOIA Request.

## **LEGAL BACKGROUND**

9. FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making the request. 5 U.S.C. § 552(a)(3)(A).

10. FOIA requires that a federal agency issue a determination on a FOIA request within 20 working days (excluding weekends and holidays) from the date of receipt. 5 U.S.C. § 552(a)(6)(A)(i).

11. The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

12. Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

13. FOIA allows the agency to extend the 20 working day deadline by up to 10 additional working days under "unusual circumstances" if the agency provides the date on which the determination is expected to be issued. 5 U.S.C. § 552(a)(6)(B)(i); *see also* 22 C.F.R. § 171.12(c).

14. Such notice must provide the requester "an opportunity to limit the scope of the request so that it may be processed within [FOIA's 20 working day] time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii).

15. State regulations further provide that "[w]here the extension exceeds 10 working days, the Department must . . . provide the requester with an opportunity to modify the request or arrange an alternative time period for processing the original or a modified request." 22 C.F.R. § 171.12(c).

16. FOIA also allows agencies to use "multitrack processing" to distinguish requests based on the amount of work or time they will require to process. 5 U.S.C. § 552(a)(6)(D).

17. State uses such "processing tracks" that distinguish between simple and more complex requests. 22 C.F.R. § 171.12(b). State "must advise requesters of the track in which their request falls and, when appropriate, should offer the requesters an opportunity to narrow their request so that it can be placed in a different processing track." *Id.*

18. FOIA's "multitrack" processing provision does not authorize agencies to extend the statutory deadline for issuing a determination on a request. 5 U.S.C. § 552(a)(6)(D). Thus, placing a FOIA request on a "complex" processing track does not change the agency's fundamental obligation to comply with that deadline.

19. If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. 5 U.S.C. § 552(a)(6)(C)(i).

20. FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.*

21. Under FOIA, this Court may assess attorney fees and costs against the United States if Niskanen substantially prevails in this action. 5 U.S.C. § 552(a)(4)(E).

**FACTUAL BACKGROUND**

**A. Interested U.S. Government Agency Waiver Recommendations**

22. Pursuant to Section 212(e) of the INA, certain J-1 exchange visitors are subject to a two-year foreign residence requirement that mandates their return to their home country or country of last legal permanent residence for an aggregate period of at least two years following completion of their exchange visitor program before becoming eligible to apply for certain immigration benefits, including certain nonimmigrant statuses and adjustments of status to permanent residence. 8 U.S.C. § 1182(e).

23. The Two-Year Foreign Residence Requirement prevents affected individuals from obtaining H-1B nonimmigrant employment status or permanent residence status unless the two-year requirement is either fulfilled or waived. *Id.*; *see also* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 U.S.C. § 1255.

24. Congress provided specific avenues for waiver of the two-year requirement under INA § 212(e), including Interested U.S. Government Agency ("Interested Agency") waivers for cases where a U.S. federal government agency determines that the individual "is actively or substantially involved in a program or activity sponsored by or of interest to such agency," 22 C.F.R. § 514.44(c)(1), or when such continued stay is in the public interest. 8 U.S.C. § 1182(e).

25. For eleven years, State compiled and published annual data regarding INA § 212(e) waiver recommendations and outcomes from Interested Agencies on its website. On information and belief, this information continues to be systematically collected and organized by State in aggregate form, and there is precedent for public disclosure of this information.

26. The agency has not made data on INA § 212(e) waiver recommendations and outcomes available to the public since Fiscal Year 2021.

27. On information and belief, more granular and more recent data exists and is readily available to State. Niskanen is informed, and thereon believes, that the Congressional Research Service was able to expeditiously obtain compiled data on the total number of INA § 212(e) waivers requested by a single Interested Agency for Fiscal Years 2018 through 2023 from State to fulfill a request made by a legislative office.

### B. Niskanen's FOIA Request

28. On December 19, 2024, Niskanen submitted a FOIA Request (the "Request") to State seeking "aggregate data on INA 212(e) waiver requests and outcomes for fiscal years 2022, 2023, and 2024, and information on disaggregated requests per federal agency for fiscal years 2014 through 2024." A true and correct copy of the Request is attached hereto as Ex. A.

29. Niskanen also requested a waiver of fees associated with processing the Request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 22 CFR § 171.16(j)(1). *See* Ex. A at 2.

30. Later that day, Niskanen received an acknowledgment email from State confirming receipt of the Request. A true and correct copy of that email is attached hereto as Ex. B. The email indicated that the Request had been assigned the tracking number F-2025-06304, which could be used to monitor the Request through the agency's "electronic portal."

31. On January 21, 2025, Niskanen received an email from State, a true and correct copy of which is attached hereto as Ex. C, placing the Request in the "complex processing track" and informing Niskanen that State would be unable to process the Request within the statutory time period due to "unusual circumstances." These circumstances included "the need to search for and collect requested records from other Department offices or Foreign Service posts." That same email informed Niskanen that it could contact State's FOIA Requester Service Center or Public Liaison about the Request, if it "would like to narrow the scope or arrange an alternative time frame to speed its

6

processing, or would like an estimated date of completion," and could contact the Office of Government Information Services ("OGIS") "to inquire about the FOIA mediation services they offer."

32. The January 21, 2025, email also granted Niskanen's fee waiver request. *See* Ex. C.

33. The January 21, 2025, email was not a proper determination on the Request as required by statute and case law. The email did not inform Niskanen of the "scope of the documents the agency will produce" or "the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

34. State therefore did not provide a determination on the Request within FOIA's 20 working day statutory deadline, which expired on January 21, 2025. Nor did State provide a determination within FOIA's 10 working day extension afforded by "unusual circumstances," which expired on February 4, 2025.

35. On February 7, 2025, Niskanen emailed State's FOIA Requester Service Center to request an estimated completion date for the Request. A true and correct copy of this email is attached hereto as Ex. D.

36. On February 24, 2025, State responded only that the "request is in process." A true and correct copy of this response is attached hereto as Ex. E.

37. On March 5, 2025, Niskanen contacted State's FOIA Requester Service Center by telephone and spoke with a staff member to inquire about an estimated completion date for the Request. During the call, the staff member directed Niskanen to email State's FOIA Requester Service Center to make this request in writing.

38. Immediately following this phone conversation, Niskanen sent another email to State's

FOIA Requester Service Center requesting an estimated completion date. A true and correct copy of that email is attached hereto as Ex. F.

39. On March 7, 2025, State responded, informing Niskanen that the estimated completion date for the Request was October 14, 2025. A true and correct copy of that response is attached hereto as Ex. G. Niskanen did not, and does not, consent to that date as an alternative timeframe for State to process the Request.

40. On April 11, 2025, Niskanen emailed State's FOIA Requester Service Center inquiring whether the agency could process a discrete portion of the Request in advance of the estimated completion date, in a good faith effort to avoid litigation or other more formal resolution services. A true and correct copy of that email is attached hereto as Ex. H.

41. On April 30, 2025, Niskanen submitted a letter to the OGIS, a true and correct copy of which is attached hereto as Ex. I. The letter explained that Niskanen had not received any response from State as to whether it would be possible to prioritize processing a discrete portion of the Request sooner than October. The letter requested OGIS's assistance in facilitating communication with the agency to resolve this question.

42. On May 13, 2025, Niskanen received an email from State's FOIA Requester Service Center, a true and correct copy of this email is attached hereto as Ex. J, stating merely that the Request "remains in process." The email did not respond to Niskanen's efforts to reasonably modify the scope of the request or arrange an alternative timeline for processing the request.

43. On June 2, 2025, Niskanen received a letter from OGIS, a true and correct copy of which is attached hereto as Ex. K. OGIS's response stated that it had received Niskanen's letter and was "reviewing the concerns" Niskanen raised to determine a course of action.

44. On July 15, 2025, Niskanen received a second letter from OGIS, a true and correct

8

copy of which is attached hereto as Ex. L. OGIS's second letter stated that it had contacted State about the agency's practice regarding requests that could not be completed within FOIA's 20 working day mandate. In response to OGIS's inquiry, State's FOIA officials "explained that like many federal agencies, DOS is experiencing organizational changes that impact resources such as FOIA processing staff."

45.     OGIS's second letter concluded by stating that OGIS would take no further action at that time and suggesting that Niskanen again reach out to State directly to "discuss how the agency is processing your request" and "express your willingness to engage with the agency on these matters." *See* Ex. L.

46.     Per this guidance, on July 16, 2025, Niskanen sent another email to State, a true and correct copy of which is attached hereto as Ex. M, reiterating our willingness to engage with the agency to process the request more efficiently, and again asking if it would be possible to prioritize processing a discrete portion of the Request sooner than October.

47.     To date, State has neither issued a determination on the Request nor produced any records in response to the Request.

48.     The information Niskanen is seeking in the Request is in the public interest because it will help the public understand how federal agencies utilize the INA § 212(e) waiver program to support healthcare access, address domestic physician shortages, and accomplish broader public health goals through lawful immigration. Niskanen's policy analysts, who possess specific expertise in immigration and healthcare policy, and regularly speak with national media outlets, lawmakers, and government entities, intend to analyze the documents obtained through the Request to disseminate the information therein to a broad audience.

49.     Niskanen recognizes the reality of State's workload and has been more than willing to

make a good faith effort to work with the agency to disclose the requested records in this matter. But in this case, State has shown little sign that it will disclose the records on a timeline that will allow Niskanen to use this information to provide meaningful facts to the public and engage in timely public policy discussions regarding the government's operations and activities.

## CLAIMS FOR RELIEF

### Count I
### Violation of The Freedom of Information Act (5 U.S.C. § 552(a)(4)(B))
*State's Failure to Respond*

50. Niskanen asserts and incorporates by reference all preceding paragraphs.

51. Under FOIA, Plaintiff Niskanen has a statutory right to have State process the Request in compliance with all statutory deadlines.

52. Defendant State, was required to make and communicate a determination within 30 business days of receiving Niskanen's FOIA Request. State should have determined whether to comply with the Request by February 4, 2025.

53. Over ten months have elapsed since Niskanen's Request was received, yet State still has not informed Niskanen of (a) the scope of the documents it intends to produce or withhold, (b) the reasons for any withholding, or (c) its statutory right to appeal any portion of any adverse determination.

54. As the record described above indicates, Niskanen has made reasonable efforts to communicate with State to narrow or refine the Request; however, State has neither provided an answer nor produced any responsive records to Niskanen.

55. State's failure to make the requisite determination about whether it will comply with the Request and communicate it to the Niskanen within the time allowed by statute violates FOIA.

56. Through State's failure to make a determination by the statutory deadline, Niskanen

has constructively exhausted its administrative remedies with respect to the Request and now seeks judicial review.

**Count II**
**Violation of The Freedom of Information Act (5 U.S.C. § 552(a)(4)(B))**
*State's Failure to Make Records Available*

57. Niskanen asserts and incorporates by reference all preceding paragraphs.

58. Under FOIA, Niskanen has a statutory right to an adequate search for the records it requested and to the release of all non-exempt records responsive to the Request.

59. Niskanen properly submitted a request for records, and State is an agency subject to FOIA, with an obligation to release any non-exempt records and provide a lawful reason for withholding any materials in response to a proper FOIA request.

60. State's continuing failure to disclose all responsive non-exempt records requested by Niskanen violates its statutory obligation to make requested records promptly available to the public.

61. Niskanen's professional activities will be adversely affected if State is allowed to continue violating FOIA's mandate as it has in this case.

62. Unless enjoined and made subject to a declaration of Niskanen's legal rights by this Court, State will continue to violate Niskanen's right to obtain responsive records properly requested under FOIA.

63. Niskanen is therefore entitled to declaratory and injunctive relief requiring State to make and communicate a determination and promptly produce all non-exempt records responsive to its FOIA Request.

64. Niskanen is also entitled to reasonable costs of litigation, including attorneys' fees and costs.

**REQUEST FOR RELIEF**

WHEREFORE, Niskanen asks that this Court:

1. Declare unlawful State's failure to provide Niskanen with a statutorily required determination on the Request within FOIA's statutory deadlines;

2. Declare unlawful State's failure to make the requested records promptly available to Niskanen;

3. Order State to make a proper determination on the Request and to immediately produce all responsive records to Niskanen at no charge;

4. Retain jurisdiction over this case to monitor State's compliance with any court orders;

5. Award Niskanen its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law; and

6. Grant any further relief as the Court deems just and proper.

Respectfully submitted on December 5, 2025.

/s/ Zachary M. Norris
Zachary M. Norris (Bar ID No. CA00240)
*Application for the D.C. Bar Pending*
Niskanen Center, Inc.
1201 New York Avenue NW, Suite 200B
Washington, D.C. 20005
(443) 850-8328
znorris@niskanencenter.org

*Counsel for Plaintiff*